RENDERED:  DECEMBER 3, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1043-WC

ELLIS POPCORN CO. C/O MATRIX
COMPANIES, TPA                                                        APPELLANT

v.
PETITION FOR REVIEW OF A DECISION
OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-91-04106

ROBERT STOGNER; HONORABLE
JOHN MCCRACKEN,
ADMINISTRATIVE LAW JUDGE;
DR. JOHN RUXER/ORTHOPAEDIC
INSTITUTE OF W. KY; DR. ROBERT
HAYDEN; DR. STEPHEN COMPTON;
AND WORKERS' COMPENSATION
BOARD                                                                     APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, DIXON, AND MAZE, JUDGES.

COMBS, JUDGE:  The Appellant, Ellis Popcorn Co. (Ellis), appeals from an

opinion of the Workers' Compensation Board (Board) that affirmed the decision of

the Administrative Law Judge (ALJ) in this post-award medical fee dispute (MFD). Finding no error after our review, we affirm.

The Appellee, Robert Stogner, was employed by Ellis as a plant engineer. He was severely injured on December 26, 1990, when he fell from a ladder and struck his head on the floor. The underlying claim was litigated. Stogner presented testimony from Dr. Mary Ellen Clinton, a neurologist, as summarized in ALJ Kerr's June 30, 1993, opinion, award, and order, in relevant part:

> Plaintiff's gait and station were significant for truncal ataxia and plaintiff had left foot drop. [Dr. Clinton] diagnosed post head trauma syndrome . . . . [Stogner] has . . . ataxia and unsteady gait such that he cannot walk without a cane. . . . [Dr. Clinton] related plaintiff's condition to his injury . . . . She also stated plaintiff will show no significant improvement[.]

ALJ Kerr determined that Stogner had sustained a 100% occupational disability and awarded medical benefits as might reasonably be required for the cure and relief from the effects of the injury.

Over the years, Ellis has filed various medical fee disputes, including a 2017 MFD contesting a proposed L4-5 microdiskectomy which ALJ Miller determined was compensable. In that proceeding, Ellis filed Dr. Joseph Zerga's August 31, 2017, report, which provides in relevant part:

> This is a 73 year old male from Murray, Kentucky. He is referred for the question of surgery approval. The history

-2-

is gathered from him and also from a review of current records. There are several issues in this gentleman. He had a fall of a ladder in 1990 and apparently had significant brain trauma, I presume predominantly to the right side of his brain. He was in the hospital for three months. He was discharged initially with a plastic brace because he had a foot drop which occurred maybe at discharge or shortly thereafter. He now has a mechanical moveable brace on his left leg and has spasticity in both limbs. He is able to ambulate with this. However, he has had several falls. He tells me he has had 400 to 500 falls. He blames it on his brace. He says sometimes his brace will malfunction and it will cause him to fall. He also has seizures. By his wife's description they are complex partial seizures sometimes with secondary generalization. His wife thinks he may have had a seizure today.

Dr. Zerga attributed the diagnosis of a disc protrusion to the original work injury, noting that Stogner "has had frequent falls since then. The fall that occurred on March 7, 2017, was the result of his clumsiness from the initial injury." Dr. Zerga explained that "[o]bviously he is paraparetic with increased spasticity in his legs, maximal in the left leg with need for a leg brace." Dr. Zerga believed that Stogner's "neurological deficits have caused the frequent falls . . . [and that] the current herniated disc is related to a fall which was caused by his gait ataxia from the 1990 injury."

On September 20, 2020, Ellis filed the amended MFD which is the subject of this appeal. Ellis contested the compensability of medical expenses for Stogner's left knee, left hip, left ankle, and right shoulder after he fell on June 16, 2020. Ellis explained that "[a]t the time of the June 16, 2020 fall, the claimant

-3-

reported that his left knee buckled in a parking lot resulting in the fall and subsequent complaints of left knee pain, left hip pain, left ankle pain, and right shoulder pain." Ellis asserted that "the fall was causally related to the claimant's development of knee osteoarthritis some 30 years following his 1990 work injury."

Ellis relied upon the August 5, 2020, peer review report of Dr. Avrom Gart, who opined that the 1990 work injury was not the cause of Stogner's left knee, left hip, left ankle, and right shoulder complaints, but that Stogner had sustained a fall just prior to an office visit with a Dr. Stephen Compton. In Dr. Gart's opinion, the fall was attributable to Stogner's development of knee arthritis over 30 years following the work injury. Dr. Gart's peer review report reflects that he "reviewed the following medical records in their entirety: 6/17/20 Report Dr. Compton." Dr. Gart also noted that a peer discussion was had with Dr. Compton, who has been following Stogner for bilateral knee and right shoulder pain secondary to osteoarthritis, and that "[t]he most recent fall occurring on 6/16/20, was allegedly secondary to one of his knees buckling resulting in a fall onto the left side."

Stogner, *pro se*, submitted several statements in response to the MFD. His September 7, 2020, statement provides as follows in relevant part:

> I went to see Dr. Stephen Compton **because of a fall I had** on June 16, 2020. The fall was caused by my left knee failing to "lock" on the forward motion of my left leg and buckling, causing me to fall hard on my left side.

> *Dr. Avrom Gart's peer review* of this case refuses to consider that my former employer has had to pay for several injuries caused by falls. My medical history will suffice to prove that I was adjudged a **"High Fall Risk"** because the functioning of my left leg/knee were [sic] compromised by injuries sustained in my fall. The original injury left me with nerve damage in my left leg and knee and impaired balance due to Ataxia related to the brain injury.

(Emphasis original.) Stogner also filed a statement dated September 25, 2020, in which he explained that:

> The dispute concerning the medical bills from Dr. Compton are for a fall that caused a sprained left ankle, damage to the left leg joint with considerable swelling and pain and a large bruise on my left lower hip that was the size of a cup saucer. A review of all my medical records will convince you that I have been deemed a "High Fall Risk" because the near fatal head injury I suffered on December 26, 1990 left me with a condition called "Ataxia," an unsteady gait, a spastic left leg and left knee that will suddenly buckle causing me to fall. I also suffer with migraines and seizures.

By opinion and order rendered December 22, 2020, ALJ McCracken ruled against Ellis on the amended medical dispute and found the contested treatment compensable, citing *Addington Resources, Inc. v. Perkins*, 947 S.W.2d 421 (Ky. App. 1997). The ALJ explained in relevant part as follows:

> Stogner states that he has had hundreds of falls since his 1990 work injury. He states that he is at high risk of falls. The ALJ notes that in a prior medical dispute, Defendant filed the report of Dr. Joseph Zerga in regards [sic] to a lumbar surgery that was caused by a 2017 fall. Dr. Zerga stated that the fall was caused by

conditions from his original injury. He also stated that in his opinion Stogner's neurological deficits cause him to frequently fall. . . .

For the fall in question for the subject medical dispute, Stogner stated in his statements to the ALJ that the fall occurred due to his left knee failing to "lock" on the forward motion of his left leg and buckling, causing him to fall hard on his left side.

The ALJ relies on Stogner['s] statements and Dr. Zerga's 2017 report to find that the June 16, 2020 fall was a natural consequence of the severe head and neurological injury he sustained on December 16, 1990. The ALJ relies on Stogner's statement and Dr. Zerga to find that the injuries to his right shoulder, left knee, left hip and left ankle, and the treatment to those body parts, were a natural consequence of his fall on June 16, 2020.

On January 5, 2021, Ellis filed a petition for reconsideration and argued that it was patent error for the ALJ to rely upon Dr. Zerga's independent medical examination (IME) report because it had not been designated as evidence in the MFD and also argued that Dr. Zerga's report lacked probative value. By order rendered on January 26, 2021, the ALJ denied the petition, explaining that he "was not persuaded by Dr. Avrom Gart's opinions. Dr. Gart never examined Plaintiff."

Ellis appealed to the Board and contended that the ALJ erred in considering Dr. Zerga's 2017 report because: (1) neither party designated it as

evidence in the subject MFD;[1] and (2) it does not constitute substantial evidence that the 2020 fall was causally related to the underlying work event.

By opinion entered on August 13, 2021, the Board affirmed. The Board discussed "the direct and natural consequence rule" explained in *Addington Resources*, *supra*, that a subsequent injury -- whether it be an aggravation of the original injury or a new and distinct injury -- is compensable if it is the direct and natural result of a compensable injury. The Board concluded as follows:

> The evidence establishes that Stogner has ongoing, long-standing neurological problems with his left leg, including foot drop and failure of the knee to lock. Dr. Zerga, 27 years after the work injury, attributed Stogner's numerous falls to conditions that resulted from the work injury. He also cited seizures related to the work injury as a possible cause of the falls. Dr. Zerga's opinions certainly constitute substantial evidence of the permanency of the work-related effects that caused numerous falls. Stogner indicated the mechanism of the fall in 2020 was consistent with his past falls. The failure of the knee to lock caused the 2017 fall that was determined to be a result of the 1990 injury. In the earlier 2020 medical fee dispute decision,[2] ALJ Harvey noted, "Stogner suffered a closed head injury with significant loss of function, including vision and hearing problems, as well as injuries to his low back. The head injury compromised Stogner's balance and has resulted in numerous falls, one of which ruptured his L4-5 disc and required a laminectomy." Clearly, the prior record

---

[1] It appears that Ellis has abandoned the first issue on appeal to this Court. We limit our discussion of the Board's opinion accordingly.

[2] In that earlier MFD, ALJ Harvey rendered an opinion and order on July 23, 2020, and held that proposed transforaminal injections were compensable.

established the effects of the 1990 injury that persisted resulted in numerous falls. The medical evidence introduced prior to this dispute, along with Stogner's testimony, and reasonable inferences drawn therefrom support the ALJ's determination that the 2020 fall was a direct and natural consequence of the 1990 injury.

The ALJ found Dr. Gart was not persuasive, noting he never examined Stogner. It is not clear from Dr. Gart's report that he had an accurate history regarding the number of falls caused by conditions related to the original work injury. Dr. Gart only lists Dr. Compton's medical records from June 17, 2020 as records he reviewed. He indicated he had a peer discussion with Dr. Compton. Dr. Gart did not discuss the cause of the osteoarthritis, other than stating the 1990 incident was not the cause. He did not discuss whether hundreds of falls caused by the effects of the work-related injury would have caused or contributed to the osteoarthritis. He did not address how the buckling of the knee in 2020 would have a different cause than the buckling of the knee in 2017 that was determined to be the result of the 1990 injury. The ALJ was well within his role as fact-finder in determining Dr. Gart's opinions were not persuasive.

On appeal to this Court,[3] Ellis argues -- as it did before the Board -- that Dr. Zerga's report has no probative value regarding causation of the claimant's 2020 fall and thus does not constitute substantial evidence. The standard of our review on appeal is well established. "The function of further review of the

---

[3] No response has been filed as permitted by Kentucky Rule of Civil Procedure 76.25(6), which provides that "[e]ach appellee may file . . . a response to the petition within 20 days of the date on which the petition was filed with the Court of Appeals."

[Board] in the Court of Appeals is to correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

We perceive no such error in the case before us. Indeed, we agree with the Board's analysis. *See Diop v. Zenith Logistics*, 486 S.W.3d 302 (Ky. App. 2015), in which we held that substantial evidence supported ALJ's decision to apply the direct and natural consequence rule. In *Diop*, the claimant suffered a fall in a bathtub and contended that a previous work injury had so compromised her mobility that she fell on this particular occasion. We concluded that the ALJ had the discretion to believe her versions of the event and to rely on the nexus between medical records from the clinic that had documented the work injury and the hospital records that documented the fall in the bathtub. *Id*. at 309.

We affirm.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Matthew J. Zanetti
Louisville, Kentucky